UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

VADIM BABYREV,

       Plaintiff,

  -v-                                                      No.  1:19-CV-11693-LTS

BRIAN BELFI and ANN MARIE T.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Petitioner Vadim Babyrev ("Babyev" or the "Petitioner"), having been adjudicated pursuant to a plea as not responsible by reason of mental disorder or defect ("NRRMDD"), see N.Y. Crim. Proc. Law § 220.15 (McKinney's 1984), of the charge of murder in the second degree and thereafter placed at Kirby Forensic Psychiatric Center ("KPFC"), commenced pro se this petition for a writ of habeas corpus pursuant to 28 U.S.C. section 2254. (Docket entry no. 1 (the "Petition").) Petitioner alleges that he has received ineffective assistance of counsel and that his right to due process as protected by the Fifth and Fourteenth Amendments to the Constitution of the United States has been violated. He also challenges, on grounds of vagueness, the constitutionality of New York Civil Procedure Law ("CPL") section 330.20, and argues that KFPC staff have prevented exhaustion of his claims in state court. The Court appointed counsel to represent Petitioner (docket entry no. 8) and Petitioner thereafter, again on a pro se basis, filed an additional pleading requesting that the Court deem the Petition supplemented to include a claim that KFPC's response to the COVID-19 pandemic violated his rights to due process as protected by the Fifth and Fourteenth Amendments. (See docket entry

no. 20 (the "Supplemental Pleading").)  With the consent of the parties, the Court construes the Supplemental Pleading as asserting a claim pursuant to 42 U.S.C. section 1983[1] ("Section 1983") that certain aspects of his confinement during the COVID-19 pandemic violate Petitioner's constitutional rights.[2]

Petitioner sues Brian Belfi, Executive Director of KFPC ("Director Belfi"), and Ann Marie T. Sullivan, Commissioner of the New York State Office of Mental Health ("Commissioner Sullivan") (collectively, the "Respondents").  In his Petition, Babyrev seeks as relief (a) release from the custody of the New York State Office of Mental Health (the "OMH"); or (b) in the alternative, transfer to a non-secure facility; or (c) in the alternative, withdrawal of his plea of Not Responsible by Reason of Mental Disease or Defect.  (Petition at 15).

The Court has carefully considered the parties' submissions.  For the reasons set forth below, Respondents' motion to dismiss the Petition (docket entry no. 32) is granted.  Respondents' motion to dismiss the Supplemental Pleading (docket entry no. 38) is also granted, but Petitioner is granted leave to file a new complaint restating and expanding his Section 1983 claim to allege personal involvement on the part of the Respondents in the constitutional

---

[1]   Because Petitioner has not been convicted of a crime, the Court therefore consider whether the conditions complained of are violative of Petitioner's right to Due Process under the Fourteenth Amendment, rather than under the Eighth Amendment.  See infra at 11.

[2]   See docket entry no. 30 (Letter from counsel for Petitioner, stating that, "Respondents . . . assert[] that [Mr. Babyrev's supplemental claim] should be brought under 42 U.S.C. § 1983 as a civil rights action" and requesting that, "[s]hould the Court agree, Mr. Babyrev requests leave to assert his constitutional claim under § 1983 and asks the Court to accept it as such without further need for revised filing"); docket entry no. 33 (letter from Respondent, stating that "[r]espondents do not object" to that construction); docket entry no. 34 (Order from the Court stating that, "[o]n consent of the parties, Docket Entry Number 20 is construed as a pleading asserting a claim of violation of the Eighth Amendment pursuant to 42 U.S.C. section 1983 without the need for further revised filing").

violations alleged therein, as well as to request appropriate relief for the alleged constitutional violations.

## BACKGROUND

In 2001, Petitioner pled not responsible by reason of mental disease or defect to a charge of murder in the second degree in New York State Supreme Court, Kings County. (Docket entry no. 32 ("Resp. Mem.") at 3.) He has since been committed to the custody of the OMH under CPL section 330.20, and has been held at KFPC, a maximum-security psychiatric facility, since January 2015. (Resp. Mem. at 3.)

Under New York State law, a court order authorizing the commitment of an NRRMDD defendant is time-bound and expires after one or two years, depending on whether it is a "First Retention Order," see CPL §§ 330.20(1)(g), 330.20(8), or a "Second or Successive" Retention Order, see CPL §§ 330.20(1)(h-i), 330.20(9), and each order must be based on a judicial determination that the defendant has a "dangerous mental disorder"[3] or is "mentally ill."[4] Any defendant who is "dissatisfied" with such an order may, upon timely request, obtain rehearing and review of the determination. CPL § 330.20(16); New York Mental Hygiene Law ("MHL") § 9.35.

---

[3] "Dangerous mental disorder" is defined under the CPL as follows: "(i) that a defendant currently suffers from a 'mental illness' as that term is defined in subdivision twenty of section 1.03 of the mental hygiene law, and (ii) that because of such condition he currently constitutes a physical danger to himself or others." See CPL § 330.20(1)(c).

[4] "Mentally ill" is defined under the CPL as follows: "that a defendant currently suffers from a mental illness for which care and treatment as a patient, in the in-patient services of a psychiatric center under the jurisdiction of the state office of mental health, is essential to such defendant's welfare and that his judgment is so impaired that he is unable to understand the need for such care and treatment. . ." See CPL § 330.20(1)(d).

In 2016 and 2017, Babyrev twice filed timely notices for a jury rehearing and review of orders signed on June 1, 2016 (the "First Retention Order") and May 3, 2017 (the "Second Retention Order") (collectively, the "Retention Orders"). (See Petition, Exhibit A(4) at 21.) However, at least partly due to repeated requests for adjournment by his counsel, these proceedings never took place. (See, e.g., Petition at 5 ("[My current lawyer] did not file the appeal of the last bench trial decision to retain me, even though I repeatedly asked him to do so . . . the previous attorney, Don Graham, adjourned my appeal/rehearing & review and agreed to unreasonable adjournments by opposing counsel until the issues to review became moot.").) Petitioner asserts that the proceedings were adjourned by his counsel without Petitioner's knowledge or consent.

On or about November 5, 2018, Petitioner, proceeding pro se, filed a petition for a writ of habeas corpus by requesting an order to show cause under New York Civil Practice Law & Rules ("CPLR") Article 70 in New York County Supreme Court. (See docket entry no. 42 ("Pet. Mem.").) In his petition and appellate filings, Petitioner asserted, inter alia, the following claims: (1) that the state's failure to provide rehearing and review of the Retention Orders violated the conditions of his sentence under CPL section 330.20 and his constitutional right to due process; (2) that he had been psychiatrically evaluated in an arbitrary manner; (3) that the restrictions on his access to pens, pencils, and eating utensils violated his constitutional rights; (4) that he was no longer mentally ill; and (5) that his representation by Mental Health Legal Services ("MHLS") amounted to a conflict of interest "due [to MHLS's] implication in [OMH's] non-compliance with CPL § 330.20(16) and MHL § 9.35." (Docket entry no. 31 ("Fleischmann Dec."), Exhibits 1-3.)

On November 14, 2018, Justice Lillian Wan declined to sign Petitioner's proposed order to show cause, stating that Petitioner had shown no basis for such an order and that a hearing date was already set for the following January. (See Pet. Mem. at 2; Petition, Exhibit A(1) at 17 (the "Wan Order").) Petitioner filed a timely pro se notice of appeal in the Appellate Division, First Department, and sought in forma pauperis ("IFP") relief and appointment of counsel. (Id.) The First Department granted IFP relief but denied appointment of counsel in a written decision on May 30, 2019. Matter of Babyrev, 2019 N.Y. Slip Op. 71439(U) (1st Dep't 2019). On January 2, 2020, Petitioner was granted an enlargement of time, to February 18, 2020, to perfect his appeal. Matter of Babyrev, 2020 N.Y. Slip Op. 60026(U) (1st Dep't 2020); (see also Fleischmann Dec. ¶¶ 7-8.) Petitioner did not perfect his appeal by the February 18, 2020, deadline, and the appeal was dismissed. Petitioner nonetheless had one year to move to vacate dismissal of the appeal, 22 N.Y.C.R.R. § 1250.10(a), (c). He did not do so, and that period lapsed on February 18, 2021.

On December 13, 2019, Petitioner, proceeding pro se, filed the Petition pursuant to 28 U.S.C. section 2254 in this Court. (See Petition.) His claims, as Respondents recognize, "are the same as or related to those he pleaded in his state habeas application." (Fleischmann Dec. ¶ 9.) In the Petition, Petitioner asserts the following claims: (1) ineffective assistance of counsel, citing the alleged failure of his attorneys to communicate with him and ensure rehearing and review of the judicial determinations underlying the Retention Orders; (2) violation of his rights to due process under the 5th and 14th Amendments for failure to provide rehearing and review of the retention determinations; (3) that CPL section 330.20 is unconstitutionally vague because it allows his attorneys to take actions on his behalf without his consent, such as procuring or consenting to lengthy adjournments that impede his access to review of the

Retention Orders; and (4) unconstitutional infringement upon his right to access the Courts, specifically through KFPC's (a) periodic restrictions on Petitioner's access to pens and pencils; (b) failure to regularly renew its LEXIS subscription; and (c) failure to provide notarial services. Regarding the fourth claim, Petitioner has subsequently argued through counsel that the claim was raised "not as a constitutional violation cognizable under § 2254 but as an impediment caused by Respondents which prevents him from accessing the courts to exhaust state remedies." (Pet. Mem. at 4.)

On April 15, 2020, Petitioner filed a supplemental pleading, contending that the conditions of confinement at KFPC place him at risk of exposure to COVID-19. (See Supplemental Pleading at 1.) As noted above, this claim is now construed as a claim pursuant to Section 1983 regarding the conditions of Petitioner's confinement. (See supra at 1.)

Background Regarding Restrictions on Petitioner's Access to Legal Tools

Petitioner contends that he has repeatedly been prevented from accessing pens since his arrival at KFPC. (Petition at 8 ("State provides very limited time to use a pen at KFPC . . ."); at 10 ("Access to pens/writing utensils is restricted and sporadic."); at 6 ("State provides very limited time to use a pen at KFPC. At one point, my use of pens was fully restricted for 5 months.").) These claims appear to refer to restrictions imposed from January 29, 2015, to June 2015, which are also described in copies of KFPC internal documents, labelled "Physician's Orders," filed by Respondents. (See Fleischmann Dec., Exhibit 5 at 65 (Copy of "Physician's Orders," dated January 29, 2015, imposing a pen restriction "until further notice"); at 68 (dated February 27, 2015, ordering an extension of pen restrictions); at 82 (dated March 19, 2015, allowing Petitioner use of crayon for writing material); at 62 (dated March 24, 2015, continuing pen restriction and limiting Petitioner to crayons for writing material); at 64 (dated May 24,

2015, continuing pen restriction and limiting Petitioner to crayons for writing material)). Petitioner makes no other specific allegations of denial of access to pens, although he generally asserts that periodic deprivation is an ongoing problem and that one of his pleadings was written with a pen refill that he had found on the floor of his living area.

In 2016, Petitioner filed a separate suit against Commission Sullivan and various KFPC personnel under Section 1983, contending that the pen restrictions violated his constitutional rights under the First and Fourteenth Amendments.[5] See Babyrev v. Lanotte, Dkt. No. 16-CV-5421-ER ("Lanotte"). Respondents in that case asserted that the pen restriction was issued following an observation by a KFPC staff member of "Plaintiff attempting to dispose of a pen that had been altered into a weapon and/or lock pick with a piece of metal." (Id., docket entry no. 101 at 2).[6] That civil action was dismissed with prejudice for failure to prosecute on December 1, 2020, following Petitioner's failure to engage in "any substantive activity . . . in over a year." (Id., docket entry no. 120.)

As noted above, Petitioner's claims as to pen restrictions since 2015 are less specific. Petitioner characterizes the restrictions as "ongoing" (Pet. Mem. at 6) and "arbitrary/whimsical" (Petition at 10) but does not allege the imposition of any restrictions occurring over any particular period of time. Since 2015, he has filed numerous court documents, apparently written in pen. Many of the filings occurred during the pendency of Petitioner's state court appeal or during the one-year period in which Petitioner could have moved to vacate dismissal of the same. This Court's records reflect that Petitioner filed

---

[5] Because Petitioner is not re-litigating his pen-deprivation claim but instead proffering the allegations underlying it as warranting excusal of 28 U.S.C. section 2254's exhaustion requirement, the Court finds that he is not precluded from proffering the factual allegations here.

[6] Unless otherwise indicated, docket entries refer to filings in the instant matter.

documents in his civil action on January 14, 2019 (Lanotte, docket entry no. 99), May 2, 2019 (Lanotte, docket entry no. 105), October 25, 2019 (Lanotte, docket entry no. 109), December 20, 2019 (Petition), February 28, 2020 (docket entry no. 9), March 9, 2020 (docket entry no. 12), March 30, 2020 (docket entry no. 15), April 1, 2020 (docket entry no. 17), and April 2, 2020 (docket entry no. 18).  During this period, Petitioner also twice filed court documents by dictating them over the phone to his next of kin, indicating that he may not have had access to pens at that time but was nonetheless able to make court filings.  (See Lanotte, docket entry no. 100 (dated February 14, 2019); Lanotte, docket entry no. 112 (dated April 23, 2020).)

DISCUSSION

Petition for Writ of Habeas Corpus

A petitioner who is in custody pursuant to a state court judgment may seek a federal writ of habeas corpus on the ground that his or her custody violates federal law, provided that the petitioner has exhausted all available state court remedies or is excused from doing so. See 28 U.S.C. § 2254; Picard v. Connor, 404 U.S. 270, 275 (1971).  "This requirement applies with equal force to insanity acquittees held pursuant to CPL § 330.20." Francis S. v. Stone, No. 97-CV-2178-LAK, 995 F. Supp. 368, 375-77 (S.D.N.Y. Feb. 24, 1998), aff'd, 221 F.3d 100 (2d Cir. 2000).  Therefore, any petitioner confined pursuant to CPL section 330.20 must present each federal claim first to a New York court, then appeal any adverse decision to the extent of any appeals as a matter of right, and then seek discretionary appeals to New York's highest court. Makas v. Holanchock, No. 02-CV-00836-JKS, 2007 WL 1651830 at *6 (N.D.N.Y. Jun. 7, 2007).

A petitioner who has not exhausted state court remedies may seek a federal writ of habeas corpus only if "there is an absence of available State corrective process; or

circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C.A. § 2254(b)(1)(i-ii) (Westlaw through P.L. 117-02).  A petitioner may not avail himself of this exception to the exhaustion requirement unless he: (1) establishes cause for the failure to exhaust and prejudice as a result of the alleged violation of federal law, or (2) demonstrates that the failure to consider the claims will result in a fundamental miscarriage of justice.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>see</u> also <u>Jimenez v. Walker</u>, 458 F.3d 130, 149 (2d Cir. 2006) ("Under the procedural-default doctrine, when a prisoner has exhausted his state remedies but has not given the state courts a fair opportunity to pass on his federal claims, the prisoner has procedurally defaulted his claims and is ineligible for federal habeas relief absent a showing of 'cause and prejudice' or 'a fundamental miscarriage of justice.'") (citation omitted).

Cause for a procedural default can be established if "responsibility for the default can be imputed to the state." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) ("[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.")  Cause warranting excusal of the exhaustion requirement can therefore be established if a procedural default results from interference by state officials and such interference renders compliance with the state procedural rule impracticable.  "Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that . . . some interference by officials made compliance impracticable, would constitute cause . . ." <u>Id.</u> at 488 (internal citation omitted).

Petitioner concedes that his state claims remain unexhausted.  (Pet. Mem. at 3.) He argues that he should be excused from the exhaustion requirement because restrictions at KFPC prevented him from exhausting his claims.  (<u>Id.</u> at 4 ("In his petition, [Petitioner] claimed

that Respondents restrict his use of pens, thereby preventing him from drafting legal documents. [Petitioner] raised this issue not as a constitutional violation cognizable under § 2254 but as an impediment caused by Respondents which prevents him from accessing the courts to exhaust state remedies."))  For the reasons stated below, the Court concludes that Petitioner has not demonstrated that excusal of the exhaustion requirement is warranted.

Petitioner makes numerous arguments regarding the constitutionality of the pen restrictions at KFPC but fails to demonstrate how these restrictions caused his procedural default. Crucially, he does not offer any explanation as to how he filed at least nine handwritten documents in federal court during the pendency of his state appeal but could not do the same in state court.  Moreover, the only restrictions that Petitioner describes with any specificity appear to have been imposed, and to have been lifted, prior to the pendency of his appeal.  (See supra at 4-5; see also Fleischmann Dec., Exhibit 5.)  Petitioner's conclusory assertion that "inability to access the state courts prevent[ed] [him] from satisfying the exhaustion requirement" (Pet. Mem. at 3) is not illuminated by any concrete factual assertions connecting the restrictions imposed by KFPC with Petitioner's failure to exhaust his state claims.

Nor does Petitioner demonstrate how any of the other impediments to legal submissions allegedly created by KFPC caused his failure to exhaust.  KFPC's alleged occasional lack of LEXIS access has not prevented Petitioner from repeatedly filing documents in federal court, and Petitioner does not explain why his failure to file in state court can be attributed to any lack of access to the LEXIS service.  KFPC's alleged failure to provide notarial services cannot be the cause of Petitioner's procedural default, as appellate briefs in New York need not be notarized.  N.Y. Civ. Proc. Law § 5513.  Because Petitioner has failed to

demonstrate that these restrictions impeded his ability to exhaust his claims, Petitioner's arguments regarding their constitutionality need not be addressed.[7]

Section 1983 Supplemental Claim

On the consent of both parties, the Court construes the claims asserted by Petitioner in the Supplemental Pleading as asserting claims under Section 1983.  To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured under the Constitution or law of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor."  West v. Atkins, 487 U.S. 42, 48-49 (1988).

The Court construes Petitioner's COVID-19-related supplemental allegations as asserting claims that Respondents failed to protect him from dangerous conditions of confinement.  Because Petitioner has been adjudicated NRRMDD, rather than convicted of a crime, his claim must be analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment.  See, e.g., Lombardo v. Freebern, 2018 WL 1627274, at *15 (S.D.N.Y. Mar. 30, 2018); see also Buthy v. Comm'r of Off. of Mental Health of N.Y., 818 F.2d 1046, 1051 (2d Cir. 1987) (applying the level of protection afforded to pre-trial detainees under the Due Process Clause to persons confined due to an acquittal by reason of insanity or their incompetence to stand trial).

To plead a viable failure-to-protect claim, a plaintiff must proffer facts supporting two elements: (1) an "objective" element, which requires a showing that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," Farmer v. Brennan,

---

[7]   The Court will not address the further arguments concerning the effect of involuntary medication that were raised by Petitioner in a sur-reply (see docket entry no. 47). "Arguments may not be made for the first time in a reply brief." U.S. v. Gigante, 39 F.3d 42, 50 n. 2 (2d Cir. 1994).

511 U.S. 825, 834 (1994); and (2) a "subjective" element, which requires a showing that the defendants acted, or failed to act, with "deliberate indifference to inmate health or safety." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Farmer, 511 U.S. at 828).

To make the requisite "subjective" showing, a person adjudicated NRRMDD must, like a pretrial detainee, allege facts showing that a jail official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [person] even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell v. Pineiro, 849 F.3d 17, 29, 33 n. 9 (2d Cir. 2017).  Mere negligence is insufficient to support a claim for a federal constitutional violation under Section 1983. See Pettus v. Lemmot Tayler, 219 Fed. Appx. 81, 82 (2d Cir. 2007) (citation omitted).

A plaintiff asserting an individual-capacity claim in a suit brought under Section 1983 must establish that the individual violated the Constitution by their own conduct, "not by reason of [their] supervision of others who committed the violation."  See Tangreti v. Bachmann, 983 F.3d 609, 619 (2d. Cir 2020).  "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id. at 618.  Respondents "cannot be held liable merely because [they] hold a high position of authority."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994), abrogated on other grounds, Sandin v. Conner, 515 U.S. 472 (1995). "Rather, to hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official."  Maldonado v. John, 21-CV-3719-LTS, 2021 WL 3292575, at *2 (S.D.N.Y. Aug. 2, 2021) (internal quotation and citation omitted).

Here, Petitioner has not alleged facts sufficient to establish liability under Section 1983 against the individual official-Defendants.  The Supplemental Pleading proffers numerous allegations relating to an alleged lack of social distancing at KFPC, but fails to allege, with any specificity, actions by the individual official-Defendants that have violated Babyrev's constitutional rights.  The allegations contained within the Supplemental Pleading make no mention of Commissioner Sullivan, and refer to Director Belfi only to the extent that he is identified as part of the KFPC administration, to which Babyrev attributes responsibility for the allegedly unsafe conditions at the facility.  (See Supplemental Pleading ¶ 1 ("Since the beginning of the COVID-19 pandemic, on or around March 1st 2020, [the] administration of Kirby Forensic Psychiatric Center (KFPC) including the director respondent Brian Belfi has unnecessarily exposed me to this dangerous and extremely contagious disease.").)

Petitioner also fails to specify what relief he seeks in connection with the supplemental allegations.  (See docket entry no. 20.)  "A pleading that states a claim for relief must contain . . . a demand for the relief sought . . .".  Fed. R. Civ. P. 8(a)(3).

Although Petitioner has been appointed counsel for his habeas corpus petition, his Supplemental Pleading was filed pro se and is not being treated as a petition for habeas corpus.  District courts generally grant a self-represented plaintiff at least one opportunity to amend a complaint to cure its defects unless amendment would be futile.  See Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794 795 (2d Cir. 1999).)  Because Petitioner may be able to allege additional facts to state a valid

claim under Section 1983, the Court grants Petitioner sixty days' leave to amend the supplemental pleading, which is deemed a complaint, to detail his claim.

## CONCLUSION

For the foregoing reasons, Respondents' motion to dismiss Petitioner's habeas petition is granted.  Respondents' motion to dismiss Petitioner's supplemental claims arising under Section 1983 is also granted, but Petitioner is granted leave to file an amended complaint setting forth his COVID-19-related deliberate indifference claims under 42 U.S.C. section 1983 and the factual basis of those claims. The amended complaint must include a caption naming each defendant against whom or which Babyrev asserts a Section 1983 claim, bear the civil action number 19-CV-11693-LTS, include factual allegations addressing the legal standards set forth above, and identify the relief Babyrev seeks, and must be filed by **July 9, 2022**.  The amended complaint will replace the Supplemental Pleading in its entirety and therefore must include all of the facts that are relevant to the Section 1983 claim.  This action may be dismissed in its entirety, without further advance notice, if no amended complaint is timely filed.

The Clerk of Court is directed to mail a copy of this Order, together with an Amended Complaint form, to Babyrev at the below address and note service on the docket.

This order resolves docket entry nos. 31 and 38.

SO ORDERED.

Dated: May 2, 2022
New York, New York

      /s/ Laura Taylor Swain
    LAURA TAYLOR SWAIN
    Chief United States District Judge

Copy mailed to:

Vadim Babyrev
Kirby Forensic Psychiatric Center
600 East 125 Street
New York, NY 10035
Prisoner Identification No.: 702293